**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**WILLIAM J. STANFIELD,**

        **Plaintiff,**                           **CIVIL ACTION NO. 05-CV-70960-DT**

        **vs.**                                     **DISTRICT JUDGE NANCY G. EDMUNDS**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**AMENDED REPORT AND RECOMMENDATION**

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The decision of the Commissioner is supported by substantial evidence on the record.

**PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff William J. Stanfield applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on May 30, 2002, alleging that he had been disabled since May 19, 2002. (Tr. 3, 46-49). Defendant initially denied Plaintiff's applications. (Tr. 3, 46-49). Plaintiff sought and obtained an administrative hearing before ALJ Earl Witten on May 16, 2003. (Tr. 251-276). The ALJ issued a written opinion denying Plaintiff's claim on September 25, 2003. (Tr. 16-27). The Appeals Council denied review of the ALJ's decision on January 12, 2005 and the ALJ's

decision is now the final decision of the Commissioner. (Tr. 5); 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

## MEDICAL HISTORY

Plaintiff was born on April 16, 1951. (Tr. 46). Modesto Sorreche, M.D. examined Plaintiff on November 8, 2001. (Tr. 181). Plaintiff reported that he had recently been hospitalized for three days because of suicidal thoughts. *Id.* Plaintiff stated that he was doing "better" with his medications, but rated the severity of his depression at nine on a ten point scale. *Id.* Dr. Correche concluded that Plaintiff suffered from an anxiety disorder and a psychotic disorder. *Id.*

On March 22, 2002 Plaintiff presented to Parminder S. Jawal, M.D. with lower back pain and a possible sacroiliac sprain. (Tr. 115). Dr. Parminder also examined Plaintiff following his complaints of dizziness on May 23, 2002. (Tr. 114). He noted Plaintiff had a history of bipolar disorder and was following a psychotropic medication regime. *Id.* On July 26, 2002 Plaintiff complained to Ihab Deebajah, M.D. of gastrointestinal reflux symptoms, a persistent cough, and neck pain. (Tr. 112). Dr. Deebajah concluded that Plaintiff had bronchitis, gastroesophageal reflux disease, and degenerative joint disease of the neck. (Tr. 113). X-rays of Plaintiff's cervical spine taken on August 6, 2002 showed narrowing of the disc spaces at C5-6 and C6-7. (Tr. 117).

On September 2, 2002 L.J. McCulloch, a psychologist, evaluated Plaintiff on behalf of the Michigan Disability Determination Service. (Tr. 119). He noted that Plaintiff suffered from chronic panic attacks and mood instability, but was able to live by himself, get along with his family, and maintain some friends. (Tr. 119-120). He concluded that Plaintiff was bipolar, depressed, suffered

from a panic disorder with agoraphobia and alchohol dependency in partial remission, and gave Plaintiff a Global Assessment of Functioning (GAF) score of 50 out of 100. (Tr. 120-124).

On October 3, 2002 Ashok Kaul, M.D. performed a psychiatric review of Plaintiff. (Tr. 126-139). He concluded that Plaintiff suffered from bipolar disorder, depression, recurrent severe panic attacks. *Id.* He found that Plaintiff suffered mild restrictions in his activities of daily living, mild restrictions in his social functioning, and moderate restrictions in his ability to understand and remember detailed instructions or maintain concentration for extended periods. *Id.,* (Tr. 148). Janet Grimm performed a physical residual functional capacity evaluation of plaintiff on October 3, 2002. (Tr. 140-146). She concluded that Plaintiff could lift up to twenty pounds frequently and ten pounds on occasion, could sit or stand for six hours in a normal eight hour workday, and could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 141-142). Dr. Sorroche's treatment notes from March 21, 2003 indicated that Plaintiff continued to suffer from an anxiety disorder and a psychotic disorder, and gave him a GAF score of 50. (Tr. 180).

## **HEARING TESTIMONY**

At the May 16, 2003 administrative hearing, Plaintiff testified about his work history and functional impairments. (Tr. 251). He stated that he stood five feet eight inches tall and weighed 300 pounds. (Tr. 255). He stated that he was able to do housework and could lift up to 30 pounds, but that lifting more than ten pounds caused pain in his back. (Tr. 258, 261, 263).

A vocational expert, Heather Benton, also testified at the hearing. (Tr. 868). She testified was asked to testify about the availability of work for a person of Plaintiff's age, experience, and educational level with certain functional limitations. (Tr. 271). Specifically, she was asked to assume the person was able to lift up to ten pounds frequently and 20 pounds on

occasion, to stand and walk for six hours in an eight hour day, to sit for six hour in an eight hour day, but could not repetitively bend, twist, or turn, and could not crawl, squat, kneel, climb, or work around unprotected heights and machinery.  In addition, the vocational expert was asked to list only jobs that involved no more than simple, routine, one or two step processes in a low stress environment with limited contact with the public.  *Id.*  The vocational expert testified that, while such a person would not be able to perform any of Plaintiff's past work, there would be substantial work available in the regional economy for such a person.  *Id.*

## **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions.  Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  It is not the function of this court to  try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also

supports the opposite conclusion and the reviewing court would decide the matter differently.  *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff had to show that:

> (1)   he was not presently engaged in substantial gainful employment; and
>
> (2)   he suffered from a severe impairment; and
>
> (3)   the impairment met or was medically equal to a "listed impairment;" or
>
> (4)   he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  20 C.F.R. § 404.1520(f).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id*. (citations omitted).

In this case, the ALJ concluded that Plaintiff retained the functional capacity to perform a range of light work, and relied on vocational expert testimony to conclude that Plaintiff was not

disabled because he retains the functional capacity to perform a substantial number of jobs in the regional economy.

Plaintiff first argues that the ALJ failed to adequately consider Plaintiff's obesity pursuant to SSR 02-01p. SSR makes clear that obesity must be considered in determining whether a claimant has a severe medically determinable impairment, whether that impairment meets a medical listing, and whether a claimant retains the residual functional capacity for work. The record established that Plaintiff meets the National Institute of Health standard for obesity, and the ALJ did not explicitly discuss the effect of Plaintiff's obesity. Plaintiff argues that the ALJ's failure to explicitly discuss Plaintiff's obesity is, standing alone, a basis for remand. In support, Plaintiff cites *Allison v. Comm'r*, 347 F. Supp. 2d 439, 446 (E.D. Mich. 2004). Obesity "can be a disabling impairment when it is severe and is accompanied by certain complications." *Id.* While Allison establishes that a failure to consider a Plaintiff's obesity may form a basis for remand, but it also stressed that the ALJ must not consider mere body mass index. Rather, "[t]he inquiry remains whether impairments in combination are supported by "signs, symptoms, and laboratory findings" that indicate a severe functional impairment." *Id.*

SSR 01-02p clearly requires that, in considering a claimant's obesity, the ALJ rely on more than mere height/weight records and body-mass indices and consider any evidence of the concrete effects of a Plaintiff's obesity. Plaintiff's argument fails here because there is no evidence on the record, other than mere height/weight records, that Plaintiff's obesity causes or exacerbates any medical problem. Given the state of the record, the ALJ on remand would have no choice but to conclude that Plaintiff's obesity is not severe, does not meet a medical listing, and does not significantly impact his residual functional capacity.

Plaintiff also argues that the RFC given to Plaintiff by the ALJ does not adequately incorporate Plaintiff's mental impairments.  The ALJ determined that Plaintiff was limited to work that involved no more than simple, routine, one or two step processes in a low stress environment with limited contact with the public.  The objective medical evidence frequently shows Plaintiff to be pleasant, cooperative, in contact with reality, spontaneous, logical, and organized. (Tr. 121, 166, 174).  Ashok Kaul, M.D. found that Plaintiff suffered mild restrictions in his activities of daily living, mild restrictions in his social functioning, and moderate restrictions in his ability to understand and remember detailed instructions or maintain concentration for extended periods.  Some treatment notes indicate that Plaintiff maintained an unkempt appearance at appointments, and occasionally entertained violent thoughts.  While the conflicting evidence regarding Plaintiff's mental capacity, it is nonetheless supported by substantial evidence on the record.

## **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence.  Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v.*

*Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 07, 2006            s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: March 07, 2006            s/ Lisa C. Bartlett
                                 Courtroom Deputy